ZENOBIA L. DAVIS,

        Plaintiff,

v.                                                  Case No. 08-C-612

CORRECTIONAL OFFICER LORENTZ,

        Defendant.

**DECISION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

Plaintiff Zenobia L. Davis, who is proceeding pro se, has filed this action seeking relief under 42 U.S.C. § 1983, alleging that her civil rights were violated. After screening the complaint pursuant to 28 U.S.C. § 1915A(a), I permitted Davis to proceed with a claim that defendant Correctional Officer Holly Lorentz violated her Eighth Amendment rights. Specifically, Davis alleges that while she was confined at the Walworth County Jail, Lorentz required her to walk in front of other inmates in a state of partial undress in order to turn in her uniform for laundering. Lorentz has moved for dismissal and summary judgment.[1] As Davis has failed to respond to either of the motions within the time allowed by Civil L.R. 7.1, I now address them.

**BACKGROUND**

Plaintiff has not responded to defendant's affidavits in support of her motion for summary judgment, so I will treat them as presenting the undisputed facts for purposes of deciding this

---

[1] Though Lorentz requests that she be awarded her costs and fees for brining the motion to dismiss, she does not press the issue in her brief and given Davis' status as a pauper, I decline to impose such a sanction.

motion.² Fed. R. Civ. P. 56(e)(2). According to defendant's affidavit, Davis was in the "Female General" section of the jail on June 24, 2008, the date she alleges the constitutional infraction occurred. (Aff. Lorentz ¶ 4.) On that day, the jail decided to switch the way in which it processed inmate laundry. (*Id*. at ¶ 5.) Jail staff had previously required the inmates to place their soiled laundry and uniforms in laundry bags, which the inmates then hung on their cell for a correctional officer to pick up. (*Id*. at ¶ 6.) The bags would be individually washed and dried, and then returned to the inmate. (*Id*.) This individualized laundry service proved too time consuming and costly, so the jail implemented a policy of collecting all inmate laundry in a laundry cart, which was brought around to the cells, instead of individual laundry bags. (*Id*. at ¶¶ 7-8.)

Other than Davis, the inmates followed this new laundry procedure without incident. (*Id*. at ¶ 8.) Davis was housed in a cell on the second tier, and on June 24, 2008, she walked to the bottom of the stairs and then undressed to her bra and panties.³ (*Id*.) She placed her uniform in the cart and then walked back up to her cell. (*Id*.) Lorentz never told Davis she had to act as she had, as she did not require her to walk about the jail in her underwear. (*Id*. at ¶ 9.) Davis apparently took it upon herself to walk about in this state of undress even though no other inmates did so that day.

---

²Lorentz gave Davis the notice required by Civil L.R. 56.1, alerting Davis that Lorentz's factual assertions would be accepted by the court as true unless Davis submitted her own affidavits or other documentary evidence to contradict Lorentz's factual assertions. (Doc. # 19.) Lorentz provided Davis a copy of Fed. R. Civ. P. 56, along with Rules 7.1, 56.1 and 56.2 of the Civil Local Rules, though it appears that subsections (c) through (e) of Civil L.R. 56.2 were truncated. (Doc. # 19-2 at 5.) Nevertheless, Davis was provided sufficient notice regarding the importance of responding to Lorentz's motion for summary judgment.

³In her complaint Davis claims she was wearing a T-shirt and underwear, though the underwear "barely fit." (Compl. at 3.)

2

The other inmates simply threw their laundry into the cart from inside their cells or left it at the bottom of their cell door for the jail staff to pick up. (*Id*.)

The Female General Unit of the jail in which Davis resided was closed off from the rest of the jail, and only female inmates and jail staff are present in the unit. (*Id*. at ¶ 10.) Although in her complaint Davis claims the entire incident was filmed, there is no video of the laundry drop-off and the windows in the unit have privacy blinds. (*Id*.)

Davis filed a grievance with the jail about the incident two days later, which was resolved with an apology and a note to Davis stating a member of the jail staff would speak with Lorentz. (Aff. Schmitz ¶ 9.) Davis did not appeal the matter further, though she had been informed of how to appeal grievances to Jail Administration. (*Id*.) Davis' grievance was the only one the jail received regarding the new procedures or the events of June 24, 2008. (Aff. Hall ¶ 6.) Sergeant Charles Hall discussed the matter with Lorentz after he received the grievance and instructed her that inmates should not be permitted outside of their cell without wearing a full uniform. (*Id*. at ¶ 7.)

After Davis filed this lawsuit in federal court, her desire to prosecute it apparently waned, as she was unresponsive to efforts by Lorentz's counsel to conduct discovery. In my scheduling order of October 27, 2008, I ordered that discovery was to be completed no later than January 26, 2009, and dispositive motions were to be filed by February 25, 2009. (Doc. # 13.) I also noted that "The plaintiff is further advised that failure to make a timely submission or otherwise comply with the court orders may result in the dismissal of this action for failure to prosecute." (*Id*. at 2.) Also, in the screening order of July 31, 2008, I noted that "Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute." (Doc. # 5 at 6.) Lorentz now presents information indicating that Davis has not responded to any requests for

3

discovery. (Aff. Bitar. ¶¶ 2-7.) The information Lorentz sought included responses to interrogatories, requests for the production of documents, and authorizations for the release of medical information.

**ANALYSIS**

Davis proceeds on an Eighth Amendment claim. The Eighth Amendment places restraints on the manner in which prison officials treat prisoners placed in their custody. *Farmer v. Brennan*, 511 U.S. 825 (1994). Though prisoners lack any reasonable expectation of privacy under the Fourth Amendment that would prevent prison staff of one sex from monitoring naked prisoners of the other sex, *Johnson v. Phelan*, 69 F.3d 144, 145, 147-48 (7th Cir. 1995), a prisoner may use the Eighth Amendment "to overcome 'calculated harassment unrelated to prison needs.'" *Johnson*, 69 F.3d at 147 (quoting *Hudson v. Palmer*, 468 U.S. 517, 530 (1984)).[4] In addition to protecting an inmate's health and safety, the Eighth Amendment also protects the inmate's dignity as a human being. *Bowers v. Pollard*, ---- F. Supp. 2d ----, 2009 WL 683699, * 13 (E.D. Wis. Mar. 17, 2009) (citing *Trop v. Dulles*, 356 U.S. 86, 100 (1958); *Hope v. Pelzer*, 536 U.S. 730, 738 (2002)). In order to prevail, plaintiff must also show that the defendants acted with a culpable state of mind, as ". . . Eighth Amendment liability requires 'more than ordinary lack of due care for the prisoner's interests or safety.'" *Farmer*, 511 U.S. at 535 (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)).

---

[4]Then-Chief Judge Posner noted that "The Eighth Amendment requires in my view that reasonable efforts be made to prevent frequent, deliberate, gratuitous exposure of nude prisoners of one sex to guards of the other sex. I doubt that any more precise statement of the proper constitutional test is feasible." *Johnson*, 69 F.3d at 155 (Posner, C.J., concurring and dissenting). The Sixth Circuit has held that "a male inmate . . . stated a claim under the Eighth Amendment . . . by alleging that 'female prison guards have allowed themselves unrestricted views of his naked body in the shower, at close range and for extended periods of time, to retaliate against, punish and harass him for asserting his right to privacy.'" *Everson v. Mich. Dept. of Corr.*, 391 F.3d 737, 757 n.26 (6th Cir. 2004) (quoting *Kent v. Johnson*, 821 F.2d 1220, 1227-28 (6th Cir. 1987)).

4

Davis' claim cannot withstand summary judgment given the evidence produced by Lorentz, which Davis has not countered. The undisputed facts show that Lorentz did not require Davis to parade about the jail partially dressed, as the new laundry procedures allowed inmates to pitch their laundry into the laundry cart or leave it in front of their cells. Lorentz's affidavit notes that Lorentz "did not instruct Ms. Davis that she had to conduct herself in the manner that she did. I did not make Ms. Davis walk around in her underwear. Ms. Davis was the only inmate who took off her uniform and walked around in that manner." (Aff. Lorentz ¶ 9.) The fact that Davis may have doubted her ability to successfully throw her laundry from her second floor cell into the laundry cart, and did not opt to leave her laundry in front of her cell for pick-up, does not mean that she was required to walk in her underwear to deposit the laundry.

The record suggests that the change in laundry procedures at the jail was implemented to decrease costs to the jail, which is a legitimate penological interest. There is nothing before me that would support a finding that these new procedures and Lorentz's efforts to implement them demonstrated a "calculated harassment unrelated to prison needs." *Johnson*, 69 F.3d at 147. An argument could be made that requiring a prisoner to parade nude before others solely to harass, even if the prisoner and onlookers are of the same gender, could be an affront to the prisoner's dignity as a human being such that it would constitute a violation of the Eighth Amendment. Yet, there is no evidence that this is what happened here. Davis took it upon herself to take off her uniform and walk in her undergarments to deposit her laundry in the female-only area of the jail, which did have privacy windows. As the undisputed facts show that Lorentz did not require Davis to walk outside her cell wearing only her underwear, and that she did not implement the new laundry collection

5

procedure with the state of mind necessary to support a finding she violated Davis' Eighth Amendment rights, Lorentz is entitled to judgment as a matter of law.

Although I dispose of this case on summary judgment, I also find an alternate basis for dismissal based upon Davis' manifest lack of prosecutive intent and her failure to abide by procedural rules and court orders. Rule 37(b)(2) of the Federal Rules of Civil Procedure provides that parties who fail to obey a discovery order risk sanction by the court, to include dismissal of the action. "When a court enters default judgment as a discovery sanction-a severe penalty that effectively terminates a party's ability to prevail on the merits-the court must find that the party against whom sanctions are imposed displayed willfulness, bad faith or fault." *In re Golant*, 239 F.3d 931, 936 (7th Cir. 2001) (footnote omitted). Failure to obey a scheduling order may also result in dismissal. Fed. R. Civ. P. 16(f)(C); Fed. R. Civ. P. 37(b)(2)(A)(v). Further, Rule 41(b) affords for involuntary dismissal of the claims of a party who fails to prosecute or comply with the federal rules or a court order, and a court need not find willfulness, bad faith or fault. *Ladien v. Astrachan*, 128 F.3d 1051, 1056 n.5 (7th Cir. 1997).

Here, Davis repeatedly failed to respond to Lorentz's requests for the discovery as she attempted to defend herself in this action. Davis was warned by order of the court that she had to make timely submissions and comply with court orders or she risked dismissal of her claim. Though she proceeds pro se, Davis must still play by the same procedural rules, as "pro se litigants are not entitled to a general dispensation from the rules of procedure or court-imposed deadlines." *Jones v. Phipps*, 39 F.3d 158, 163 (7th Cir. 1994). I find that Davis' total failure to respond to any of the various discovery requests made of her by Lorentz would warrant dismissal of this action had

6

I not concluded Lorentz was entitled to summary judgment based upon Lorentz's motion made without the benefit of discovery.

Finally, Lorentz looks beyond the Eighth Amendment claim identified in the screening order to also put to rest any potential pendent claims Davis might have arising out of these facts. Lorentz argues that Davis cannot prevail on a claim for negligent infliction of emotional distress, as such a claim in Wisconsin requires negligent conduct, causation, and severe emotional distress. (Br. in Supp. Mot. for Summ. J. at 10) (citing *Camp v. Anderson*, 2006 WI App 170, 295 Wis. 2d 714, 714 N.W. 2d 146). The Wisconsin jury instruction on the issue notes that such distress must be "so severe that no reasonable person could be expected to endure it." WIS JI-CIVIL 1511 (2007). Lorentz sought authority from Davis to discover information from her medical records, but never received permission to obtain such records. The information might have been helpful to Lorentz in defending against this claim. In any event, Davis never presented any evidence that she sought out medical or psychological care as a result of the incident. Instead, she simply filed a grievance at the jail indicating she thought there was a better way to collect the laundry, and did not even administratively appeal the response she received.[5] Under these facts, Lorentz is also entitled to judgment as a matter of law on a claim that Davis suffered severe emotional distress as a result of her depositing her laundry.

---

[5]Although Lorentz presents evidence that Davis did not administratively appeal the grievance she filed, she does not argue that Davis has failed to exhaust all remedies the state made available to her, something the Prison Litigation Reform Act ("PLRA") requires. "The PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006) (citation omitted).

7

Accordingly, Lorentz's motion for summary judgment is **GRANTED** and this matter is **DISMISSED** with prejudice. Lorentz's motion to dismiss is **DENIED** as moot.

**SO ORDERED** this ___6th___ day of April, 2009.

                                              __s/ William C. Griesbach__
                                              William C. Griesbach
                                              United States District Judge